The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable James A. Kinney is presiding. You may be seated. This is our case 422-0362, Lee County, Illinois v. Lee County Landfill and Public Services. We have Mr. Pellant, Mr. Price, and for the appellee, Mr. Grannon and Ms. Manning, but Ms. Manning is not arguing. Pleasure to have you all here. Nice to be live. Pellant, you may proceed. Good afternoon, and may it please the Court. For the Lee County Board to have granted the landfill a permanent monopoly, as the trial court found, would be an abrogation of the county board's statutory duties under the Solid Waste Management Plan Act and under the Environmental Protection Act. And that's why they didn't do that. What the record establishes, and what the trial court missed, is that there is a long course of dealing between these two parties. All within the framework of the act. In particular, the Solid Waste Planning Act. That course of dealing is controlled by the plan, and every promise made in the course of dealings by the county and by the landfill are reflected in plan updates. Every promise came with and is reflected by and confirmed in a limited time within the meaning of the plan. The course of dealing includes the host agreement and the three amendments to it that are at the heart of the landfill's position. But when we look at the specific promises made, instead of the paraphrase that the trial court judge used, the promises are always about what the county board was going to do with the next iteration of the plan. For example, in the original plan, it says that the county is going to explore the disposal facilities. In the first amendment to the plan, in the first update, it says we'll rely on the landfill for the next five years. That's in 1998, that's the first one. The first amendment to the host agreement says, we will amend the plan to designate the landfill as the sole landfill as long as it is in compliance with both the agreement and the plan. The first amendment to the host agreement is in 2002. That is anticipating the 10-year plan update that is going to come. In the 10-year plan update, this is the critical update that starts this sole landfill designation. It says, and this is found in the appendix at pages 708 and 709, that it is for the next five years. It states it in a graph and it states it in the text that the designation of sole landfill is for the next five years. That's because the statute requires the county board to update the plan every five years. No promise can come but with a time clock affixed to it of five years because the county is charged with examining the needs as they evolve up the county for the disposal of waste and what technologies are available and how to achieve the recycling goals. When the landfill first started, recycling wasn't nearly the goal it was and became as part of the updated plan throughout. The first amendment to the plan and the first update to the plan in the 10-year update and the first amendment to the host agreement are the critical provisions that start us down this track. In the second amendment to the host agreement, we once again reverse all prior promises and what was reflected in the plan and specifically say that in the following five years, the county would not cite any new landfill in Lee County. The second amendment to the host agreement reflects the fact that the first promise about sole landfill came with a clock affixed only for five years as is consistent with the plan and the statute. In that second amendment, we then go on to talk about what will be done to the 15-year plan. Again, the 15-year plan update provides that it will only be for five years. Again, there is a chart affixed in the plan, wholly ignored by the trial court, that says it will only be for the next five years. Quote, number nine, designate the Lee County landfill as the sole landfill to be permitted within the borders of Lee County. Implementation ongoing for the next five years. The trial court ignores that provision, doesn't deal with that part of the plan update at all. Instead, it focuses on what's in the second amendment recitals and doesn't go on to consider the actual terms of the second amendment, which says in its 15-year solid waste plan update, the county shall amend the plan to provide as follows. Nowhere is there the simple promise decided by the trial court that is Lee County landfill is the sole landfill to be cited within the borders of Lee County for all time. That promise is never made. It is always a promise to update the next plan. That's how it goes until we get to the 20 and 25-year plan updates. In the 20-year update, the county has recognized that it will continue to rely on the landfill as its primary source of disposal, but it no longer promises them that it will be the sole landfill because its needs are evolving. The markets have changed. It's reflected in the plan update. The county is doing its statutory duty to say, yes, we recognize for the next five years we will continue to dispose of waste there, but we may need to cite a second one. The beauty of the Village of Rockdale case, for which I was the hearing officer and I mentioned in that, is that the need for another landfill is determined by the legislative body. They have the power, the discretion is theirs, and it has to be recognized. In this case, the legislative body is the Lee County Board. The Lee County Board saw the evolving need for a possible second landfill. By the time we get to the 25-year plan update, it's explicit. The county says in its 25-year plan update, we are going to need a second landfill. It said so. The landfill that is here has objected saying, no, you made a promise to us long ago that we would be the sole and exclusive landfill. That promise is inviolate and you cannot overcome it. You did enter into a contract with them, didn't you? We did. It was a separate document. It was a solid waste management agreement dated June 1st of 1994. Absolutely correct. You are allowed to enter into contracts with private businesses or corporations or entities, aren't you? We are. What case do you have that says that you can then break a contract simply by amending a plan set up by the county board? There may not have even been parties to the contract. I would challenge the major premise, Justice, that we are breaking the contract. The contract always includes the provisions of the statute. You can't contract your way around a violation of the Illinois Environmental Protection Act. The county and the landfill couldn't agree to allow pollution to happen in violation of the act. The act is implicit within the powers of the county board to enter into the contract to begin with. Did the contract include time limit? The contract says it will update specific plan updates, yes. Talking about a plan, that's a separate document. No, that's with the amendment to the contract. Did the contract include time limit? It does. The second amendment to the, for example, the first amendment, which was the critical one, the first amendment to the plan, says that we agree to amend the solid waste management plan to designate Lee County Landfill. And that's what they did. Well, they go on. As the sole landfill to be permitted in Lee County, so long as allied waste was open and operating the Lee County Landfill and is in compliance with the party's agreement. And the solid waste planning and recycling act. They have to be in compliance with it, too. That's the contract provision. You create a primacy that doesn't seem to exist in any statute or in any case that you've cited, anyway. We're relying on the principle that the law, as it exists, the framework of the law is always implied as a term in every contract. And we're relying on the fact that the Lee County is not a homerun municipality. It doesn't have homerun powers. It has only the statutory powers given to it by the state. Those powers, the ability to do a host agreement at all, is confined by the Environmental Protection Act and the Solid Waste Planning Act. Those acts confine what power I have. And those acts don't allow me to give a monopoly for all time. It says I have to update every five years. Okay. I'm with you up to a point. In fact, you are allowed to provide a monopoly if you choose to do so. Not without abrogating my duty to do the solid waste plan. If it changes, if the needs of the county change to dispose of waste, and the legislative body is the one in charge of determining that, now I'm not allowed to reflect the change in any way? I'm held to a monopoly, I guess? Here's why the basic logic of that escapes me. Traditional contract law is longstanding and has a pretty firm base. What you're saying is that a legislative body that can change over time can decide to contract themselves out of a contract that the previously existing legislative body, because we're talking about a county board. Parties change all the time. That they can somehow get around basic contract law by just deciding one day, well, we've decided we're not going to have a contract with party B. That's pretty much the premise of your entire argument, is that you can, through a legislative process, decide at some future date you're not going to be bound by the contract that your predecessors entered into. And it would seem to me that I can't envision that our state law would allow legislative bodies whose structure changes all the time, whose decisions may be by whim or by fortuitous circumstance or who knows what, that they could somehow break basic contract law just by deciding to vote something different. I agree with 99% of what you said. What you're missing in that analysis, Justice, is that this is a unit of government. And things are ultra-virus or without authority a lot more often when it comes to government bodies contracting than others. And so, from the get-go, when the county sits in contracts with this landfill operator, everybody knows the rules of the game. The rules are, I have power over the next five years. That's what the statute said I have power over. That's not what your agreement that you entered into back in 1994 said. Your agreement said that as long as the sole landfill to be permitted in Lee County, so long as Allied Waste was open and operating in Lee County landfill and was in compliance with the parties agreed to. And the plan. It's essential, Judge. That's all one sentence. That they have to be in compliance with the Solid Waste Planning and Recycling Act, which mandates a five-year review of capacity and need. So the period is not after the word agreement. The period is after the words the Lee County Solid Waste Management Plan and with the Solid Waste Planning and Recycling Act. That was the promise we made. Those words were ignored by the trial court, too. The specific promise made was our promise is bounded by and within the context of the statute. You're a sophisticated landfill operator who has to already comply with these statutes. You ought to recognize that's what that means. That is not a promise for all time. How could it be? That you'd be the only landfill no matter what our needs are. Nothing is inviolate like that.  They have abilities to have relief. As the trial judge said, you can set up any other landfills you want as long as it doesn't violate the contract you've got with this particular landfill. Correct. You can decide through legislative decision, create, set up, establish, operate any other landfills you want in any other way you want as long as they comply with all the other statutory conditions. As long as they comply with this plan. As long as you don't violate the contract you've already entered into with the other parties. But you're reading the promise too broadly. The promise is a limited promise. I'm just talking basic contract law. I agree with you, but what's the specific promise here? Well, then, let's get back to the premise of my first question. What statute or case do you point to that says a county legislative body can legislate its way out of a binding contract entered into with a second party? No, because that's not what's happening. We're not asking for that power. The power we're saying is when we made a promise that you'd be the sole landfill, we told you it would be for five years. It's in every published public document that we say. You knew it was only for five years. And if I only had to do it once and it was forever, this reminds me of that movie, A Few Good Men, where he asked Jack Nicholson, why the two orders? Why did the landfill insist on it being renewed as an affirmation three more times? If once was forever, why did they insist on it three more times? Can I ask you to come at this from the county's perspective on its needs first? So if the county decides it needs a second landfill and it proceeds to create a second landfill, then the issue is, is the current landfill operator entitled to damages for breach of a contract? Yes. And so then we can look at the contract and say, did the contract prohibit that conduct? I feel like if we come at it from that way, we get to what the issue is, which is did you protect yourself in that contract from that suit against damages? And our answer is yes, because in every instance we made the promise, we referred to the planning act and the plan. And because we have to reevaluate the need every five years, everybody understood we would have to look at this. And now the time has come with our powers under the planning act and our obligations under the planning act to reevaluate it and add the second landfill. The obvious question, why not say that in the contract and protect yourself? Well, you didn't say it as clearly as you just did. So why not just put it in the contract that this obligation, just say it. This obligation only goes as far as the contract. Well, because the contract says we're going to amend the plan. Right. That's the promise we made to do. That we would designate you as the sole owner of the land. So you're saying when it comes to amend a plan that has a limited term, you didn't say we promise in perpetuity that you will forever be the only operator. That's exactly right. We always said we will give you the designation in the plan. We're not designating you as the sole landfill for all purposes, for all time, for any other purpose. It's in the plan. And that's why when you go to the plan, each time it says for the next five years, for the next five years until it does it, until we didn't make any promise. And then we said, now we know we need a second landfill. Then in the 25th update, 25-year update, we said we need another one. And again, why insist then on a reaffirmation that, oh, because that's what the amendments say. In your 10-year update, you will designate us as the sole landfill. In your 15-year update, you will designate us as the sole landfill. Obviously the one that designated it in the 10-year wasn't for all time, or you wouldn't have needed to insist on it for the 15-year update. And the third amendment, which just parrots a bunch of things that was clarity and falls in between the two plans, just continues the last representation, which was you were going to tell us we were the sole landfill in the 15-year. Let's say you're two and a half years into a five-year plan. Do you have the discretion to change the plan halfway through, and then therefore change their contractual rights? If you go through the statutorily mandated public hearing process, and again, we're not changing their rights. Their rights always come with... They're defined by the extent of the plan. Yes. Are there reasons to update the plan? That's what the Act provides for, but there's a whole process to doing it. Again, in conclusion, the specific promises made have to be valid. Not the paraphrase, not the summary. And the specific promise always ties the designation of sole landfill to the plan. And every iteration of the plan told everybody it was only for five years, until it wasn't. I don't want you to go outside the record, but how did, why did, the circuit court go astray under your view? Because it believes we're doing what Justice DeArmond said. We're just violating a contract because we have a new legislative body. Instead of recognizing that it's all within the context of the powers granted by the plan. I don't think the judge recognized that when it comes to units of government, we are constricted by the contracting powers. It's not like private parties. And so we're ultra-vires a lot more than a private party or corporation. And I think that's what the judge failed to appreciate. As well as the specific promises. He used paraphrases. In particular, the third page where he lays out what the promise was, that's not a sentence you can find anywhere in the record. Thank you. Thank you, counsel. We'll hear from you on rebuttal. He's the court. Your Honor, when Ms. Manning and I first started talking about this argument, how we're going to divide up our time if we were going to divide it up, I told her pretty much everything I had to say I could say in about five minutes. Unfortunately, I'm going to take longer than five minutes. But I think everything that I've heard here so far today confirms the fact that really, everything I really need to say about this situation, I could probably say in five minutes. The fact of the matter is that the county is continuously arguing that its solid waste management plan somehow controls the behavior and the rights and responsibilities between these two parties. And they've indicated here that the trial judge completely ignored their solid waste management plan in rendering the decision that he made in this case. In fact, he did not. And when you read his decision, you'll see that he spent a couple of pages analyzing the solid waste management plan, the EPA Act, the Local Solid Waste Disposal Act. He analyzed all that situation. And what he came back to in that analysis is the same thing that I can keep coming back to in the analysis, is that there is a contract between these parties. And the contract requires that both sides abide by it. Both sides are supposed to do what they contract to do. Could you clarify that on this key provision here about exclusivity and without time limit, was your client promised that they would be the exclusive landfill provider for the county? Or were they promised that the county would amend its plan to call your client the exclusive landfill provider under the plan? And the time limit exists in the plan. The time limit does exist in the... No, the time limit exists in the contract itself. When you ask what was my client promised, I think there's two ways to look at that, and that's my five-minute argument. There's two ways to look at that situation. We can look at explicitly what it says in the contract. Not in the plan. What does it say in the contract? The contract says, the initial agreement says that it takes effect on the day that they signed it, which was June 1 of 1994, I think, whatever the day was. And it continues in existence, unabated, for 20 years, for the longest to occur of 20 years, or the time that the landfill goes out of business, stops accepting waste. That agreement was in effect. It didn't say anything about exclusivity. It just talked about the fact that there was a relationship between the county and the landfill starting in 1994 and until the landfill went out of business, if that was outside of 20 years down the road. At some point down the road, in fact, in 2002, the county and the landfill got together and decided to amend the plan. And I think contrary to what counsel has indicated to you here, it isn't that the landfill said, oh, we've got to amend the plan, or that we've got to amend our contract. It wasn't that at all. It's that there were interests on both sides of the fence that required some modification of the original agreement. So they came together and they came up with a modification of the original agreement. And one of the concessions that the county made at that time, in favor of the landfill, was that the landfill would be the only landfill sited in the county for as long as the landfill continued in business. For all intents and purposes, that's what it said. So is there a clause of the contract where that's the promised benefit, or is the promised benefit that the plan would be amended to so provide? That's correct. If you look explicitly at the contract... That was an or, so that can't be correct. Well, I'm sorry. I'll take that other side. What the contract explicitly says is that, after it goes through all the reasons why they got to that point, it explicitly says that the county will amend its plan to provide that the landfill will be the exclusive landfill operating in the county. There won't be any other landfill sited in the county. But it's in accordance with the plan, and the plan contains a time limit. That's not what it says. No, but it says in accordance with the plan. That doesn't say in accordance with the plan. It says... Compliance with the plan. As long as the landfill is in compliance with the plan and the state EPA laws. And there is no question in this case that the landfill has always been in compliance with the plan and the EPA laws. Always. So on the one hand, I mean, to answer your question, the contract itself, the amendment to the contract itself, makes specific reference to amending the plan. I think the intent of the parties is definitely implied by the four corners of the document. And you can read it to say that what the county intended was to give exclusivity to the landfill. So your position is that when the agreement talks about being in compliance with the plan, it means the operation of the existing landfill. It doesn't mean incorporating all of the other time limits. It does not. If it intended to incorporate those things, the agreement would have said that this amendment to the solid waste management agreement incorporates all the terms and conditions of the... It doesn't say that. It has all its own terms and conditions in it. Would you have drafted the contract differently now, in retrospect? Yeah. I would have left out the business about amending the plan. Because whoever drafted it at the time, and I'm not casting fault at anybody or any kind of disrespect to them, but whoever drafted it, drafted it because they had in front of them whatever it was that they were concentrating on at the time. And they decided to say in one place, well, this is what the landfill wants. They want exclusivity. And we're willing to give them that because they're going to give us all these other things. So here's what we're going to do. We're going to amend our plan. And the length of time that the amendment is to be in effect is indefinite. The contract, the original agreement, took effect on June 1 of 1994 and remains in effect even until the present time, until the landfill essentially goes out of business. So this amendment, it incorporates that. It specifically incorporates the original agreement. So the thing just continues on. Now, they went out and they amended it the second time. I don't know exactly what all the parameters were that were being discussed at the time, and frankly, I don't think they make any difference. But the fact of the matter was the county wanted some relief and the landfill wanted some relief. And part of what the landfill was requesting of the county at that time was that, okay, we want you to reaffirm your position with respect to our exclusivity in the county, and we'll do these other things for you. And they agreed to do it. And they did it almost in identical language in the second amendment that they did in the first. They said, we agree to amend. They go through all the reasons why they're going to do it. And then they say, we're going to amend our plan that allows exclusivity in favor of the landfill for as long as the landfill continues in operation and is in compliance with the plan and the state law regarding disposable waste. What happens next in the real world? Well, what happened next in the real world was that somebody came along and needed some other relief. And whenever they did that in 2012, they amended the plan again. Not the plan, they amended the agreement again. And this amendment of the agreement does all kinds of things that favor the county. And it incorporates the original agreement, the first amendment, and the second amendment among its terms. So when council says, well, the third amendment, this is a hot pot of stuff, and it does not, specifically does not extend the same right that the first and second amendments did, it does very specifically extend the same right as did the first and second amendment by incorporating those documents by reference. I didn't ask that question very well. First of all, I like that review. But I mean, what happens next after today, if you prevail? If I prevail, the landfill continues in business, and if the county decides to site another landfill, there will be a lawsuit. Well, they could site another landfill quickly as long as you operate it. Well, they could do that. They could do that. So if you prevail, and they want another landfill, they have to come to you. Whether we operate it or not. They would have to come to you. Would you have the power to say, yeah, that's okay with us. We don't want to operate another one. If you need another one, go ahead. Sure. We have the right to negotiate our contract and to amend the contract as appropriate. And the flip side, if the county prevails, they can do what they want. If the county prevails, then they can do whatever they want, I suppose. That by itself probably won't end all the litigation because it's going to create a default under the terms of this agreement. Well, yeah, we never want to see litigation end. I personally enjoy it. Following up on that, so they site another landfill, you've got a claim for damages. That vindicates your contract right as you see it. You may not be able to enjoin it because you may be working against the public interest. It's possible. So isn't that the resolution here? Do you dispute that this case would... it wouldn't prevent that, would it? I don't think this case would prevent that. And that's part of the argument against the declaratory judgment relief that the plaintiff was asking for. A declaratory judgment is supposed to end the controversy between the parties. And that kind of a determination in this case will not end the controversy between the parties. But what the judge did, which I think was entirely appropriate under the circumstance, was to answer the question that the county asked him to answer, which is whether or not it was entitled... they were entitled or it was entitled to site a second landfill in the county despite the fact that it already had an agreement with somebody else that said that they wouldn't do that. And the trial judge looked at that and came to a conclusion. And he wasn't specific about which side of the fence he came down on in the analysis I was giving you a second ago. But he could look at the contract very specifically in its exact words and come to the conclusion that today the county has agreed to amend its plan so that the landfill will be the only landfill sited in the county. And there isn't any dispute about that. He also could have just taken a look at the agreement and the three amendments to the agreement and come to the conclusion, because it's severely implied in the content of all of that, that exclusivity has been granted to the landfill. And nobody else really gets an opportunity to operate here unless the county does something to change the existing contractual arrangement between the parties. What about the ultra-virus argument? This is against the public interest. Well, I don't think this is something that's against the public interest. But again, the county can do whatever they want to do. I mean, they have the rights as a county and a county board to take particular action. But that does not invalidate the rights that the landfill in this case has to enforce their rights under the contract. How do they fulfill their plan if the plan involves a second landfill? They come back to the landfill, this landfill. Without asking. Without putting you in the position of being able to say no. How would they fulfill the plan? And I guess that goes back to my prior question. Can't they still go ahead and cite a second landfill and let the fallout be the damages if there's a binding agreement? I think that's exactly right. Let me ask a question. And this isn't determinant of anything. I can be educated. Do other counties grant the exclusivity that you contend that you were granted in this county? My understanding of that is yes, they are. And it happens frequently. Is it also the opposite? Some counties would say, we don't know what our needs will be in the future. We're going to treat you well, but you don't have exclusivity. Well, I would suspect that in this part of the state that happens more often than not. And it probably happens not because they don't know what their needs are going to be in the future, but because there's probably only one vendor in the county. There may be only one location for a landfill in a particular county. Especially when you get this far down in the state. But those rights are established by statute. And I know that you've read them, and I'm not going to reread it here, but the right to be exclusive, even if it creates non-competition, is legislatively approved. So you would suggest that the legislature's anticipated this? I think the legislature anticipated it from the get-go, yeah. It's kind of like the cannabis dispensary thing. I mean, the legislature anticipated that there were going to be lots of applicants. And I'm sure when this happened, that the legislature anticipated that there were going to be lots of companies looking around for places to put landfills and to operate landfills at a profit. There used to be, just like everything else in the state, there used to be lots of small landfill operators, I'm sure. They've all been taken over by much larger landfill operators. But I think that situation exists, and I think it will continue to exist. You have more time. I didn't mean to interrupt your chain of thought. Oh, sure you did. Thanks, Judge. But really, the crux of the argument is exactly as I was discussing before, is that there are two ways to look at this situation, and they both involve the analysis of the agreement itself. The agreement is still in force. The last amendment to the agreement that took place in 2012 required that all of the prior amendments in the agreement itself were incorporated into it. Those amendments to the original agreement required explicitly that the county adopt an amendment to its solid waste management plan that would grant exclusivity to this landfill. That situation continues to exist now, and it will continue to exist for as long as the landfill continues in operation and accepts waste in compliance with the terms of the party's agreement. Counsel, do you happen to have a copy of the third amendment? I have it in front of me, yes, I do. Solid waste management agreement. I do. The final whereas on recitals? Yes. Ends with, as long as the landfill was open and operating in compliance with the agreement, no reference to the plan. That was the most recent amendment. That's correct. Which then incorporated everything else. That's correct. Okay. None of them make any reference that would incorporate the plan as a part of any of these documents. Further down, it says again that the operator is willing to provide the assurances and investments in the landfill sought by the county  commitment, and determination that the landfill will be the only landfill to be permitted in Lee County. Correct. Okay. And that was the agreement of 2012. And that's my point with respect to the other side of the argument. If there's some question about whether it's explicitly stated in this agreement what the exclusivity rights were, it's certainly very severely implied by the terms of the contract itself. And to add to what you just read, Your Honor, the very next paragraph on that, which is after the now therefore paragraph one, says the recitals are incorporated herein as if fully set forth. So they are actually contract terms. And I think that's exactly what the agreement between the parties was at the time, and I think that's what the trial judge decided under the circumstances. And I believe under those circumstances you should affirm. Thank you, Your Honor. Thank you, counsel. Rebuttal? Rebuttal. Thank you, Justice. So we have agreement. The original contract has nothing about exclusivity. We all agree on that. So you go to the First Amendment, and the only promise made is in paragraph 11, it's in the appendix at 663, the county agrees to amended solid waste management plan to designate the Lee County landfill as the sole landfill to be permitted in Lee County so long as operator is open and operating the Lee County landfill or the expanded Lee County landfill and is in compliance with the agreement as amended and the Lee County solid waste management plan and as the county's preferred long-term disposal solution in accordance with the Solid Waste Planning and Recycling Act. Can I interrupt you? Yes. Because that sounds like you're saying, look, you've got to do the things you need to do. They don't have control over whether you open up a second landfill. That was part of the declaratory judgment action, is does the contract prohibit it? I get it, but they aren't going to be the ones. You might do it. It sounds like that language was trying to define what their standard of conduct was, which was to comply with whatever the mechanics were and the measurements were for them. Actually, this brings up a good question that Justice Connick asked, and that's not how it works. Whether a landfill is sited or not is determined by the state of Illinois. Because everybody needs waste disposal facilities and nobody wants them in their backyard, the state created this rubric where the local jurisdiction, whether it's county or municipality, is essentially a jury. They get the findings of fact and then they send that down here to the Pollution Control Board who says, on the basis of those findings of fact, it qualifies. We bless it and make it a landfill. All we can do is entertain the possibility. One of those criteria that they look at is, is it consistent with the plan? When you ask, can the county just do whatever it wants? The answer is no. The Environmental Protection Act says, first of all, the site has to meet all the criteria, including the plan. Right, but all the landfill operator can do to be consistent with the plan is to operate its landfill in accordance with the rules. The only one who can make it the sole landfill is you by not opening another one. That's correct. Well, and the state of Illinois. Correct. Then the question becomes, can we even entertain an application, a million dollar proposition? My point is the language that says that the landfill operator has to continue to operate the landfill in accordance with the plan, that can't mean it won't open a second landfill. Right? It's only about, that language there is only about what sort of the standard of conduct with respect to the existing landfill. This is about the conduct of the county. Paragraph 11 is what the county is promising. And what the county promised. So long as. So long as. Yes. That's after so long as. Well, that's a further condition on the promise that were made to them. So long as the operator is open and operating the Lee County Landfill or the expanded Lee County Landfill and is in compliance with the agreement as amended and the Lee County Solid Waste Management Plan and the county's preferred long term disposal solution, etc. Yes, those are further conditions on this promise. Now let's go to the second amendment. Yes. Do you have that one? I do. Okay. And again. Again, you reiterate that the parties agree that the landfill will be the only landfill to be permitted in Lee County. Right? No. Second. That's the second from the bottom. Hang on. Maybe I'm just reading it wrong. In the recitals. The second is the third. In the recitals of the second amendment. Yes. Second whereas from the bottom. Yes. And then. If the operator makes certain commitments to the county and the county agreed the landfill would be the only landfill to be permitted in Lee County. Right? No. It says reaffirm its agreement, commitment, and determination. Okay. We're reading two different things obviously because I'm reading straight from the recitals. Second amendment to solid waste management dated November 18 of 2008. Correct. Yes. Second whereas from the bottom. Because whereas operator is willing to provide. No. Whereas Allied Waste Industries of Illinois Inc., allied in the county, entered into a first amendment to solid waste management agreement on October 15 of 2002, first amendment in print. Through which, among other things, operator made certain commitments to the county and the county agreed the landfill would be the only landfill to be permitted in Lee County. So now you've included in the second agreement an interpretation of the first agreement indicating that it was intended to be the only landfill to be permitted in Lee County. You then go on to the next page. The county seeks assurances and investments in the landfill from the operator in order to ensure that the solid waste disposal needs of the county are met in the future, etc. Operator is willing to provide the assurances and investments and willing to reaffirm its agreement it will be the only landfill to be permitted in Lee County. And again, at the very end on page three, the sole designation is contingent upon the Lee County landfill remaining open and operating and remaining in compliance with the 1994 solid waste management agreement as amended. All parts of the contract have to be read together. And to say that the summary of the first amendment overrides the actual provisions of the first amendment, that's not how contract flow works. The actual provision to the question about could you be sued for breach, if we didn't amend our plan to provide it, we could be sued for breach. We amended our plan. Why are we being sued for breach then if we cite a second landfill that comes to us? All we've said, and we're trying to give clarity in the declaratory judgment, is that was the promise, to amend the plan. But you've amended it back. Huh? You've amended it back. So you did amend it to say those things, but then the more recent amendment changes those things. No, the second amendment says the same thing. Now we're going to update the 15-year plan. In the second amendment it says, in this 15-year solid waste plan update the county shall amend the plan to provide. And here it is that it's going to be the sole designation is contingent upon Lee County, blah, blah, blah, blah, blah. So did we update the 15-year plan? We did. Therefore, you can't sue us for it. But that's just the 15-year plan. When we got to 20 and 25, the county evaluated its needs differently and said it's no longer the case. I want to ask a question. Your time's expired, but we wanted to hear what Jen would say with that. I'm not thinking about ripeness or prematurity or it's not yet an issue, but if the landfill prevails, is the ball in your court to make that application to the EPA after you have a hearing? I think that's what you said would happen first. There'd be the equivalent of a jury trial in the county with open public hearings, et cetera. And then you would go to the EPA and say, we need another landfill. If they approved the site and you had a vendor that wanted to operate there, could you do that? Forgetting about whether there would be damages, forgetting about whether there would be a breach, I'm asking, could you do that? I mean, you might decide not to for whatever reason, but I'm saying, could you? If an applicant came forward and wanted to site it, could we entertain the application? Is that the question? Yeah. Another vendor says, we'd like to put a place. We think there's a place in your county. We need your cooperation. We'd have to have these hearings, and then you talk to the EPA about it. Well, the answer would be, yeah, we would, but it would be doomed from the start if you believe that these commitments are part of the plan for all time. Because one of the criteria any applicant would have to meet would be that it's consistent with the county's plan. And if you're telling me the county gave away the right to have any other entity, if they gave it away, gave this monopoly, then no other applicant could ever be consistent with that criteria. They could never solve it. It would be doomed from the beginning. Well, it would be doomed, but you'd pay damages. I mean, they could do it. It's not doomed. You could open the second site, but you may owe them damages if they have a contract right that's been violated, if that's a consequence of the contract, right? Is that hypothetical? That is so, but the major premise is not the same. The limited promise made here was, is it part of our analysis agreement? I mean, certainly it could have been made clear in the contract the limitations that you're suggesting now. The fact that it wasn't may end up costing you money if you site a second facility and they have a right to an exclusive one. Well, if there's an ambiguity here, which we're all circling around, then why was summary judgment granted first? But second, the ambiguity has to ignore what the contract said. Go look at the plan, and the plan is absolutely crystal clear. That's why they never talk about it. Five years only. It says it repeatedly every time in every one of the updates until... If the plan was to put it in this township, right? But you entered a contract with them to put it somewhere totally different. They could still get you for breach of contract, right? Because you promised to pay them to do it there. If we made that kind of promise, but I'm saying we didn't. You have to look at the specific promise made. We're dissecting one part of the promise out. The sole landfill language. We're clipping that out and saying, see, sole landfill. It's sole landfill with a bunch of conditions, including the limitations of time. Okay, thank you. I think we're better educated. Thank you.